

United States District Court

For the Northern District of Georgia

Case No: 24-CV-5021

Diondre Cobb, Plaintiff,

V.

Expeditors International of Washington, Defendant.

## COMPLAINT

### I. INTRODUCTION

1. Plaintiff Diondre Cobb, by and through principles of equity, brings this action against his former employer, Expeditors International of Washington ("Expeditors"), for its intentional unlawful and unjust treatment in violation of federal law, including the Americans with Disabilities Act (ADA), and for equitable relief based on Defendant's conduct, which violated fundamental principles of fairness and good faith.

2. The plaintiff seeks both legal and equitable remedies under the maxims of equity: "Equity will not suffer a wrong to be without a remedy" and "He who seeks equity must do equity." The legal remedies available are insufficient to fully compensate Plaintiff for the harm caused by Defendant's conduct.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the Americans with Disabilities Act (ADA). This Court also has jurisdiction to hear the equitable claims in this matter under its inherent equitable powers.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the actions complained of took place in the Northern District of Georgia, and Defendant conducts substantial business within this jurisdiction.

5. Plaintiff has received a Notice of Right to Sue from the United States Equal Employment Opportunity Commission ("EEOC") dated 9-23-2024. Plaintiff now exercises his right to sue Expeditors for the conduct described herein.

## III. PARTIES

5. Plaintiff Diondre Cobb is an individual residing in Atlanta, Georgia. He was employed by Expeditors at its Atlanta office, located at 1015 Aviation Boulevard, Atlanta, Georgia, from 2021 until his wrongful termination on September 27, 2022.
6. Defendant Expeditors International of Washington is a global logistics company headquartered in Seattle, Washington, with offices throughout the United States, including the Atlanta office where Plaintiff was employed.

## IV. EQUITABLE CONTEXT AND LEGAL BACKGROUND

7. Plaintiff invokes the equitable jurisdiction of this Court, seeking remedies to correct the harm caused by Defendant's unjust and discriminatory treatment. The defendant's actions violated fundamental principles of fairness, and the Plaintiff seeks relief that can only be granted under equity.
8. The doctrine of equity demands that this Court act to correct the injustices suffered by Plaintiff, particularly considering Defendant's failure to engage in good faith. The equitable maxim "Equity regards as done that which ought to have been done" applies here, as Defendant failed to honor its obligations.

## V. FACTUAL ALLEGATIONS

What Happened

9. In 2022, Plaintiff encountered a medical condition that substantially limited his major life activities. It should be noted that Mr. Cobb also has a well-documented underlying condition that Expeditors was aware of as well. This medical condition required him to seek reasonable accommodations from his employer to perform his job duties. These accommodations, which were minimal and consistent with the company's previous accommodations for other employees, would allow Plaintiff to continue working without any significant disruption to the company's operations.
10. On or about August 2, 2022, Plaintiff informed his Manager, Greg White, of his need for accommodations due to a medical condition that required him to Quarantine. The

plaintiff provided medical documentation and details to support his request in full compliance with Expeditors' policies and, most importantly, federal law.

11. Initially, on or about August 3, 2022, Plaintiff received accommodations. Greg White and Emily Carlton, Plaintiff's immediate supervisor and corporate headquarters, offered and approved Plaintiff's ability to work from home, as other employees had done in the past under similar circumstances, particularly during the COVID-19 pandemic.

### Who Was Involved

12. The plaintiff's direct Manager and Supervisor, Greg White and Emily Carlton, and Human Resources personnel from Expeditors Corporate Headquarters were aware of the Plaintiff's medical condition and the reasonable accommodations needed for the Plaintiff to continue performing his job.

13. The plaintiff's accommodation was approved by corporate headquarters through an email from Emily Carlton on August 3, 2022, allowing the Plaintiff to work from home due to his medical condition, promising he would be treated as those with COVID-19.

### Where the Dispute Occurred

14. The plaintiff continued working remotely from his residence in Atlanta, Georgia, as permitted under the accommodation, and while working, there was no disruption to his duties.

15. On or about August 11, 2022, without warning, Plaintiff's accommodation was revoked. Greg White notified Plaintiff that his ability to work from home was rescinded, and Plaintiff was placed on unpaid leave. The plaintiff had been actively performing his duties remotely and had not requested any leave.

### When the Events Took Place

16. Between August 2 and August 11, 2022: Plaintiff performed his job from home under the previously agreed accommodations. The plaintiff worked around 4 hours on August 7th, 2022, and approximately 18 hours over two days (August 10th and 11th), including 1 hour of overtime each day, before being informed that his system access had been restricted due to being "out of the office" for five days.

17. The plaintiff immediately sought clarification and requested that the previously agreed-upon accommodations be reinstated, explaining that the restriction was in error since he

had been working remotely. Mr. White responded by stating that he would "look into it" and "get back to him." However, no further communication or action was taken to resolve the issue. This resulted in Mr. Cobb being placed on unpaid leave, causing him financial and emotional hardship, including further loss of enjoyment of life.

18. Later, around 4:00 PM on the afternoon of August 11, 2022, Jennifer Williams, the Branch Manager, placed Mr. Cobb on leave without any form of communication with him, again not engaging in the interactive process.
19. Mr. Cobb continued to work the rest of his shift on August 11, 2022.
20. Prior to this abrupt and unexplained reversal of his accommodations: Mr. Cobb notified Mr. White on the morning of August 11, 2022, that he was required to go in for an appointment for his medical condition on August 12th, 2022. Mr. Cobb also advised Mr. White that he would log back on remotely as he had been after the appointment to work. Mr. White's response was simply, "Okay."
21. From then on, Mr. Cobb received no response from Expeditors, and subsequent communications with Mr. White were ignored.
22. On or about August 13 and 15, 2022: Plaintiff reached out to Mr. White again, requesting formal confirmation of the denial of his accommodations and further clarity. The plaintiff also provided more medical documentation to substantiate his requests. However, Mr. White ignored him rather than engaging in an interactive process as required under the ADA.
23. Despite Plaintiff's efforts to return to work and resolve the accommodation issues, Expeditors failed to respond or explain.
24. On September 7, 2022, after getting medical clearance to return to work, Mr. Cobb was told by Employee Relations Caitlin Monti that the provided clearance letter from the Department of Health and its medical staff was insufficient and that he needed a separate set of documents completed or else he couldn't return to work and that his leave would be unsubstantiated without it. Mr. Cobb explained that he never asked to go on leave and that Expeditors forced him on leave. He also asked why he was not allowed the reasonable accommodation and why it was reversed. Expeditors provided no answer.
25. On or around September 13, 2022, while at home, Mr. Cobb received a call from Mr. White that he should be back at work that day. Mr. Cobb advised him of what Ms. Monti said about his return. Mr. White advised Mr. Cobb that he was told he could start work. Mr. Cobb immediately turned on his computer and began working. Upon his return to the

office on or around September 14, 2022, he found himself unable to clock in because his employment was in "inactive" status in the company's system, and he could not access his benefits or essential systems to his job function.

**Inability to Clock in and Out Like His Peers**

26. Unlike his peers, Plaintiff was unable to clock in or access the company's timekeeping system after his return to work on September 13, 2022. Despite following the same return-to-work procedures as his colleagues, Plaintiff's employee status in the system remained inactive, preventing him from logging his hours or receiving compensation for work performed. Mr. Cobb worked off the clock.

27. Greg White, Plaintiff's manager, informed Plaintiff that his inability to clock in was due to a "system outage" affecting Plaintiff's access. However, Plaintiff witnessed that no other employees were affected by this issue, and his peers continued to clock in and out without any interruption. This discrepancy raised concerns about the true nature of Plaintiff's status and whether this was a retaliatory measure taken by Defendant.

28. On September 21, 2022, after further inquiries by Plaintiff, Expeditors' Employee Relations department sent an email stating that Plaintiff's employee status had been reinstated and his access to clock in was active as of September 13, 2022. However, Plaintiff was still unable to clock in through the system, contradicting the information provided by Employee Relations.

29. This inconsistent and conflicting information from Greg White and Employee Relations suggests that the "system outage" was a fabricated explanation meant to obscure the fact that Plaintiff's access had been deliberately restricted, preventing him from properly recording his work hours and accessing his benefits.

**401k Benefits and False Explanations**

30. In addition to being unable to clock in and out, Plaintiff's access to his 401k benefits was similarly blocked. The plaintiff attempted to access his 401k benefits via Expeditors' employee portal, but the portal showed that his access had been restricted due to "inactive status"

31. The plaintiff needed access to his benefits to supplement the wages that weren't paid as promised by Mr. White due to the abrupt reversal of his accommodation and the burden of being placed on forced leave.

32. The plaintiff discovered that no other employees experienced difficulties accessing any of their benefits (401k) during this time, and no system issues were reported to affect the entire branch/company, indicating that Mr. Cobb was being singled out and subjected to different treatment than his peers.

Plaintiff's Attempts to Resolve the Issues

33. Between September 13 and September 22, 2022, Plaintiff sent multiple texts and emails to Greg White and Employee Relations Caitlin Monti, attempting to resolve his employment status in the system, the time clock access, request for accommodations, and 401k access issues, but his inquiries were largely ignored or met with conflicting information.
34. Plaintiff's access remained restricted throughout this period, and the delay in resolving the issue resulted in significant financial hardship, as Plaintiff was unable to access his 401k benefits or receive timely compensation for the work he had performed.
35. On September 27, 2022, without engaging or providing reasonable accommodations or rectifying benefits access issues, Expeditors terminated Plaintiff's employment, citing his failure to adhere to the attendance policy, alleging they did not hear from Plaintiff. This explanation was pretextual, as the attendance issues were directly caused by Defendant's deliberate restrictions on Plaintiff's ability to clock in and out, blocked access to benefits, refusal to accommodate, employment status, and reversal of previously approved accommodations in connection with Plaintiff's notice of required medical appointment. Further, Mr. Cobb attempted communication with Expeditors last, but Expeditors ignored Mr. Cobb's communications.

VI. CAUSES OF ACTION

COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA) (Failure to Provide Reasonable Accommodation)

42 U.S.C. § 12101 et seq.

36. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

37. The plaintiff is a qualified individual under the ADA, as his medical condition significantly limited his ability to perform certain work functions in the office without accommodations.

38. Despite having initially approved Mr. Cobb's request for reasonable accommodation, Expeditors subsequently revoked this accommodation, leaving him unable to work and forcing him onto unpaid leave.

39. This abrupt revocation of accommodation further exacerbated the impact on Mr. Cobb's pre-existing condition, which was known to Expeditors, causing him significant financial and emotional hardship, further diminishing his enjoyment of life.

40. Defendant failed to provide reasonable accommodations, despite being fully aware of Plaintiff's condition and his ability to perform essential job functions remotely.

41. The defendant's revocation of the work-from-home accommodation and subsequent refusal to engage in the interactive process violated the ADA.

42. The defendant's treatment of Mr. Cobb diverged from its typical handling of similar situations, such as employees with COVID-19, where work-from-home arrangements were readily granted without extensive documentation.

43. This difference in treatment raises questions about the legitimacy of the Defendant's denial of Mr. Cobb's accommodation request and suggests a potential violation of the ADA's reasonable accommodation requirements.

## COUNT II: RETALIATION IN VIOLATION OF THE ADA

42 U.S.C. § 12203(a)

44. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

45. The plaintiff engaged in protected activity by requesting reasonable accommodations for his medical condition.

46. Defendant retaliated against Plaintiff by revoking his previously approved accommodations, placing him on unpaid leave, and ultimately terminating him in response to his requests.

47. The close proximity in time between Plaintiff's request for accommodation and the adverse actions taken by Defendant demonstrates a casual connection between the protected activity and the retaliation. Furthermore, the close proximity between Plaintiff advising Mr. White of his need to attend a doctor's appointment for said medical condition and the subsequent revocation of his accommodations further strengthens the inference of a retaliatory motive.

48. Mr. Cobb and his coworkers previously experienced no issues with system access or system turning off after 5 days during similar absences, including the proffered treatment the Plaintiff was to receive as those under COVID-19. This, coupled with the Defendant's departure from its established practices, raised concerns about a potential retaliatory motive behind the revocation of his accommodations.

49. Defendant's abrupt revocation of Plaintiff's accommodation, followed by the unexplained placement on unpaid leave and subsequent termination, suggests a retaliatory motive rather than a legitimate, non-retaliatory reason for the adverse actions.

50. Defendant's failure to engage in a good faith interactive process to explore alternative accommodations further supports the claim of retaliation.

51. Plaintiff's termination under the false pretense of a lack of communication, despite his continuous efforts to communicate and seek accommodation, further demonstrates the retaliatory nature of Defendant's actions.

COUNT III: VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA) (Failure to Pay for Hours Worked and Failure to Maintain Accurate Timekeeping Records)

29 U.S.C. § 201 et seq.

52. Plaintiff incorporates all previous paragraphs as if fully set forth herein.
53. Under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., Defendant was required to pay Plaintiff for all hours worked, including overtime, and maintain accurate timekeeping records for all employees.

54. Defendant failed to compensate Plaintiff for work performed on August 7, 2022 and subsequently restricted Plaintiff's ability to log hours after his return to work on September 13, 2022, despite Plaintiff's continued performance of duties.

55. Defendant failed to maintain accurate records of Plaintiff's hours worked, as required by the FLSA, by deliberately marking Plaintiff's status as inactive and preventing him from accessing the company's timekeeping system.

56. As a direct result of Defendant's actions, Plaintiff has suffered financial loss, including unpaid wages and benefits, in violation of the FLSA.

COUNT IV: EQUITABLE ESTOPPEL (Failure to Honor Promises of Accommodation)

57. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

58. Defendant made a clear and unequivocal promise to Plaintiff on August 3, 2022, by offering and approving his request for work-from-home accommodations.

59. The plaintiff reasonably relied on this promise to his detriment, adjusting his work and personal circumstances based on this approval.

60. Defendant's subsequent, abrupt revocation of this accommodation on August 11, 2022, without notice or explanation, caused Plaintiff significant financial and emotional harm, as he relied on the initial promise to continue working without disruption.

61. Upon his initial return to work, Mr. Cobb, now facing financial constraints due to Expeditors' actions, requested further accommodations to work from home. This request stemmed directly from the financial burden imposed on him by Expeditors' previous removal of accommodations.

62. Plaintiff further relied on Defendant's promise that his employee status would be reinstated and that his access to clock in and out and his benefits would be restored, as stated in communications from Employee Relations on September 15, 2022, and in the Expeditors Employee Handbook.

63. These promises were not fulfilled, as Plaintiff remained unable to log his work hours or access his benefits.

64. Despite Mr. Cobb's continuous efforts to communicate and seek a reasonable resolution, his requests for accommodation and clarification were consistently ignored by Expeditors and Greg White.

65. Ultimately, Expeditors terminated Mr. Cobb's employment under the false pretense of his supposed resignation due to a lack of communication.

COUNT V: BREACH OF EQUITABLE DUTY (Failure to Engage in the Interactive Process in Good Faith)

66. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

67. In addition to the breaches of equitable duty described above, the defendant further breached its duty to engage in the interactive process in good faith as required by the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

68. The interactive process is a mandatory obligation that requires open communication and a sincere effort from both the employer and the employee to identify and implement reasonable accommodations.

69. In this case, Expeditors' actions demonstrated a lack of good faith and a disregard for its obligations under the ADA's interactive process requirement.

70. Expeditors' arbitrary revocation of Mr. Cobb's previously approved accommodation without explanation, its failure to respond to Mr. Cobb's requests for clarification and reinstatement of the accommodation, and its callous disregard for the impact of its decisions on Mr. Cobb's well-being all demonstrate a failure to engage in the interactive process in good faith.

71. Failure to engage in a good faith interactive process further breaches Expeditors' equitable duties and legal obligations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court, under its equitable jurisdiction, provide the following relief:

1. A declaration that Defendant's actions violated the ADA and were inconsistent with principles of equity;
2. Correction to Plaintiff's employment termination;
3. An injunction requiring the Defendant to implement equitable policies to prevent future violations;
4. Compensatory damages for lost wages, emotional distress, and other financial harms suffered because of Defendant's actions
5. Economic damages; front pay and back pay
6. Punitive damages to deter Defendant from future unlawful conduct;
7. Pre- and post-judgment interest as allowed by law;
8. Any further equitable relief the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all claims triable as of right.

Dated: October 28, 2024

Respectfully submitted,

Diondre Cobb

720 Hank Aaron Drive SE #745

Atlanta, GA 30315

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Atlanta District Office
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
1-800-669-4000
Website: www.eeoc.gov

# DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/23/2024

**To:** Mr. Diondre Cobb
720 Hank Aaron Drive SE #745
ATLANTA, GA 30315

Charge No: 410-2023-04457

EEOC Representative and email:    MATTHIEU LINEN
Investigator
Matthieu.Linen@EEOC.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 410-2023-04457.

On behalf of the Commission,

Digitally Signed By: Darrell E. Graham
09/23/2024
Darrell E. Graham
District Director